UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/1/2019____

------------------------------------------------------------ X
                                     :

YSAEL ESPINOSA,                        :
                                       :

                   Plaintiff,    :         18 Civ. 8855 (LGS)
                                       :

        -against-          :        **FINDINGS OF FACT**
                                       :        **AND CONCLUSIONS**

ABRAHAM REFRIGERATION CORP. et. al,  :        **OF LAW**
                                       :

                  Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Ysael Espinosa brings this action against Defendants Abraham Perez, Abraham

Refrigeration A/C Corp. and Abraham Refrigeration Corp. ("ARC") under the Fair Labor

Standards Act (the "FLSA") and New York Labor Law (the "NYLL"). The principal threshold

question is whether Plaintiff was an "employee" to whom the protections of the FLSA and

NYLL apply. Based on the facts adduced at a half-day trial, Plaintiff was an employee rather

than an intern.

## I.    FINDINGS OF FACT

      Based on the documents admitted into evidence and credibility judgments of the

testifying witnesses, the following are the Court's findings of fact. Plaintiff has the burden of

proving his case by a preponderance of the evidence. *See Mhany Mgmt., Inc. v. Cty. of Nassau*,

819 F.3d 581, 599 (2d Cir. 2016).

### A.    Defendants' Operations and Employees

      Defendant ARC is a New York corporation that owns, operates, and does business as

Abraham Refrigeration. Perez testified he is not familiar with an entity called Abraham

Refrigeration A/C Corp. In its post-trial memorandum of law, Plaintiff concedes that Abraham

Refrigeration A/C Corp. should be dismissed.  Accordingly, Defendant Abraham Refrigeration A/C Corp. is dismissed.  "Defendants" as used below means Perez and ARC.

Abraham Perez is the owner and operator of ARC.  The parties do not contest that Defendants were Plaintiff's "employer" for the purposes of the FLSA and NYLL.  ARC offers HVAC/C&R parts and supplies and air conditioning installations, service, and maintenance.  ARC operates from two locations: (1) a store that sells new refrigeration parts (the "Store") on Washington Avenue and (2) a parts yard for the purchase and sale of used materials (the "Yard") on East Tremont Avenue.  Perez also performed "service calls" by repairing or replacing HVAC systems in his clients' homes and places of work.

### B. Plaintiff's Hiring

Plaintiff's uncle, "Sancho" Ortega, told Perez that Plaintiff was currently unemployed and asked Perez to hire him.  Perez told Ortega that he "didn't need anyone, but that [he] could train . . . [Plaintiff] and then give him a little something."  Before Plaintiff was hired, he had a 6- to 7-minute conversation with Perez.  Perez told Plaintiff that he was hiring him "to load some trucks."  Plaintiff did not sign any paperwork, and the parties did not discuss Plaintiff's compensation or the duration of his employment.  Plaintiff testified that he expected to be paid because he had "already worked at several places, and people work for money."

### C. Plaintiff's Duties

Plaintiff worked at Abraham Refrigeration from mid-January 2018 to mid-July 2018, mostly in the Yard.  Other workers at the Yard were Waldi Valdez (the manager), William and Gregory, as well as day laborers who loaded vans.  Plaintiff did not work elsewhere during this time nor did he attend any educational or vocational school.  From November to December 2017, before his employment with Defendants, Plaintiff had helped a refrigerator mechanic perform in-

home services.

During the first two weeks of Plaintiff's employment, he helped load a truck bound for the Dominican Republic with materials from the Yard and kept track of the parts placed in the truck. During that time, William showed Plaintiff the Yard's accounting book, which contained records of who needed to be paid, who was owed money and the pending work that needed to be done. William put Plaintiff "in charge" of the book and taught him the procedures for keeping inventory at the Yard. A week after Plaintiff began work at the Yard, William left for the Dominican Republic. At the end of the second week, Perez told Plaintiff that he was in charge of "collections, payments, and everything that exists in the business." Throughout the work day, Plaintiff texted Perez images of materials brought to the Yard to be sold so that Perez could set a final price for the materials. Plaintiff also assisted in repairs at the Yard a few times a week. For example, Plaintiff learned how to test maximum capacity compressors and gained exposure to new machinery. Perez testified that when he had time -- which was "barely ever" -- he taught Plaintiff to test engines and conduct repairs at the Yard.

Plaintiff sometimes accompanied Perez on service calls. During these calls, Plaintiff assisted with ductwork by taking measurements and installing and sealing ducts. Gregory also went on service calls. Apart from Plaintiff's bookkeeping duties, he and Gregory performed "very similar" work. Regarding Plaintiff's work, Perez testified, "[a]ll the work that [Plaintiff] did was actually Waldi's as the manager. So he started doing it, and he was doing it well, so I just let him do it."

**D.        Plaintiff's Hours and Pay**

Perez paid Plaintiff approximately $300 per week in cash without accompanying paperwork. Perez testified that he paid Plaintiff because "he didn't have any kind of income,"

"he was learning, and so [he] . . . wanted to incentivize him somehow."  Defendants did not furnish Plaintiff with a wage notice of the type described in NYLL § 195(1).22.  Defendants did not furnish Plaintiff with weekly wage statements of the type described under NYLL § 195(3).

Throughout Plaintiff's employment, Defendants did not track the number of hours that he or any yard worker worked per workweek.  Plaintiff had keys to the Yard and Perez told him he "had to open the yard at 8 a.m."  Perez confirmed that Plaintiff opened and closed the Yard, but stated that the yard hours were 9 a.m. to 4 p.m. and that Plaintiff worked Monday to Saturday.  Plaintiff did keep a record of the hours he worked.  The Court's findings as to the hours Plaintiff worked are discussed below.

## II.    CONCLUSIONS OF LAW

### A.    Plaintiff's Status as an "Employee"

Based on the evidence at trial, Plaintiff was an employee and not an intern.

"The strictures of both the FLSA and NYLL apply only to employees" and not interns. *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 534 (2d Cir. 2016).  As the definition of employee is substantially the same under FLSA and NYLL, the Second Circuit has used the same test to distinguish between employees and interns under both statutes. *See Glatt*, 811 F.3d at 534.  To distinguish between employees and bona fide interns, students of vocational schools or vocation-related programs, the "proper question is whether the intern or the employer is the primary beneficiary of the relationship."  *Glatt*, 811 F.3d at 536; *see also Velarde v. GW GJ, Inc.*, 914 F.3d 779, 784 (2d Cir. 2019) (holding that the primary beneficiary test applies to interns and students of vocational schools or vocation-related programs).  In *Glatt*, the Second Circuit noted that the following non-exhaustive list of factors may provide insight into which party is the primary beneficiary of the economic relationship:

1. The extent to which the intern and the employer clearly understand that there is no expectation of compensation. Any promise of compensation, express or implied, suggests that the intern is an employee—and vice versa.
2. The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions.
3. The extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit.
4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.
5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.
6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.
7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship.

*Glatt*, 811 F.3d at 536–37. Courts apply these factors by considering "the totality of the circumstances." *Glatt*, 811 F.3d at 536. "No one factor is dispositive and every factor need not point in the same direction for the court to conclude that the intern is not an employee." *Wang v. Hearst Corp.*, 877 F.3d 69, 73 (2d Cir. 2017).

### 1. Expectation of Compensation or Paid Work (First and Seventh Factors)

The first factor concerns the extent to which the intern and the employer clearly understand there is no expectation of compensation. *Glatt*, 811 F.3d at 536-37. "[W]here. . . the programs [are] described specifically as unpaid internships for students -- and students applied to the internships with that unambiguous understanding -- the relationship is far less likely to take on an abusive quality." *Wang*, 877 F.3d at 73. "Any promise of compensation, express or implied, suggests that the intern is an employee -- and vice versa." *Glatt*, 811 F.3d at 537.

The first factor weighs in favor of finding that Plaintiff was an employee. At the outset of the employment relationship, Plaintiff and Perez had a mutual understanding that Plaintiff would be entitled to compensation. *See Glatt*, 811 F.3d at 536-537. Perez admitted that when he spoke to Plaintiff's uncle about hiring Plaintiff, he stated that he could "train him and then give

him a little something." Plaintiff also testified that although he and Perez did not explicitly discuss compensation before he started work, he expected compensation because he "already worked at several places, and people work for money." Perez also testified that he wanted to "incentivize" Plaintiff by compensating him. Plaintiff's expectations bore out in practice when Plaintiff, like all the other workers at the Yard, received regular compensation in cash each week from Perez.

The seventh factor concerns "[t]he extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship." *Glatt*, 811 F.3d at 537. As Plaintiff was already being paid for his work at the Yard, the seventh factor is neutral.

### 2. Beneficial Training and Duration (Second and Fifth Factors)

As to the second factor, courts must analyze "[t]he extent to which the internship provides training that would be similar to . . . an educational environment, including the clinical and other hands-on training provided by educational institutions." *Glatt*, 811 F.3d at 537. This training may include "products of experiences on the job." *Wang*, 877 F.3d at 74 (internal alterations omitted).

Plaintiff received little training while employed by Defendant. Plaintiff's primary responsibilities included loading trucks, taking inventory and helping Waldi with ductwork in the Yard and during service calls. William, who performed the bookkeeping activities before Plaintiff, briefly showed Plaintiff the procedures involved in taking inventory before leaving a week later. This quick exchange resembles the type of on-the-job training an employee would receive from a co-worker rather than the extended guidance a professor or teacher would provide in a classroom or vocational setting. *See Velarde*, 914 F.3d at 788 (2d Cir. 2019) (holding that

vocational students were interns when they were given "twenty-two weeks of guided practical experience" at the vocational school's salon). There is also no indication that Plaintiff received any training or guidance for the ductwork he performed. Waldi did not teach Plaintiff to perform the ductwork; instead, the two men divided the tasks needed to complete the installation while Perez completed refrigeration repairs. Nothing in the record suggests that Plaintiff received feedback or critique regarding his work. *See Mark v. Gawker Media LLC*, No. 13 Civ. 4347, 2016 WL 1271064, at *9 (S.D.N.Y. Mar. 29, 2016) (holding that the plaintiff was an intern when his supervisor would "read his articles and give him criticism and comments" in a manner similar to his editor at journalism school). The only skill Plaintiff seemed to have learned on the job was how to test engine compression and make some unidentified repairs. However, as Plaintiff performed the bulk of his daily work without guidance, the second factor -- training -- weighs in favor of finding that Plaintiff was an employee.

The fifth factor concerns the extent to which the internship is limited to the period in which the intern engages in beneficial learning. *Glatt*, 811 F.3d at 537. For example, if a program is confined to the "number of hours required by the state . . . to qualify for licensure" for a vocation, this factor weighs in favor of finding that a plaintiff is an intern. *Velarde*, 914 F.3d at 786–87.

The parties did not discuss how long Plaintiff would work for Defendants. Perez testified that in the past, he had trained individuals until they were ready to start their own companies, and based on their ability, this took between 2 months and years. However, the record does not reflect that Perez was monitoring Plaintiff's progress in any way with an end date in mind. For example, Plaintiff was already performing the Yard manager's work just two weeks into his job, but Perez "just let him do it" instead of graduating Plaintiff to more challenging work as he

gained more experience or knowledge. The fifth factor weighs in favor of finding that Plaintiff was an employee.

### 3. Displacement of Other Employees (Sixth Factor)

"The sixth factor (displacement) considers the extent to which an intern's work complements the work of paid employees or displaces it. An intern's work is complementary if it requires some level of oversight or involvement by an employee, who may still bear primary responsibility." *Wang*, 877 F.3d at 75.

The sixth factor also weighs in favor of finding that Plaintiff was an employee. Plaintiff's duties were very similar to Waldi's and Gregory's. Plaintiff testified that apart from his bookkeeping duties, he and Gregory performed "very similar" work, which included ductwork installation on service calls and loading trucks at the Yard. As to the inventory work, even Perez testified, "[a]ll the work that [Plaintiff] did was actually Waldi's as the manager." Waldi did not bear primary responsibility for performing the inventory work because Plaintiff was put "in charge" of it and texted updates to Perez regarding the inventory without Waldi's input. Similarly, with respect to the ductwork, Waldi and Plaintiff split the tasks, with Waldi building the ducts and Plaintiff taking measurements, sealing, and installing the equipment. *See Velarde*, 914 F.3d 779, 788 (2d Cir. 2019) (vocational school students were employees when they provided services "under the watchful eye of industry experienced educators" (internal alterations omitted)). The sixth factor also weighs in favor of finding that Plaintiff was an employee.

### 4. Ties to Formal Education or Vocational Training (Third and Fourth Factors)

The third and fourth *Glatt* factors "relate to the integration of the internship to the student-intern's academic program and academic calendar, respectively." *Wang*, 877 F.3d at 74

(2d Cir. 2017). A "central feature of the modern internship . . . [is] the relationship between the internship and the intern's formal education." *Glatt*, 811 F.3d at 537.

The third factor weighs in favor of finding that Plaintiff was an employee. Plaintiff's work for Defendants was not tied to his formal education because Plaintiff was not enrolled in any formal educational or vocational training program, had not completed any educational degrees in the recent past, and did not regard his work with Plaintiff as a stepping stone to more formal education. *See Wang*, 877 F.3d at 75 (finding that the third factor weighed in favor of finding that the plaintiffs are interns when the program offered college credit, internships were arranged to accommodate the academic calendar and the intern used the job to get "professional experience" between her undergraduate and graduate schooling). The fourth factor is neutral because Plaintiff was not in school, and there was no academic schedule for Defendants to accommodate. *See id.*

\* \* \* \*

As all the *Glatt* factors are neutral or weigh in favor of finding that Plaintiff was an employee, the Court holds that Plaintiff was Defendants' employee rather than intern.

### B.    Plaintiff's Undercompensation

Although an employee typically "has the burden of proving that the employer did not compensate him for completed work," where the employer failed to keep accurate records, the *Anderson* burden-shifting framework applies. *Grochowski v. Phoenix Const.*, 318 F.3d 80, 87-88 (2d Cir. 2003) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)). Under this framework, an employee discharges his burden "[ (1) ] if he proves that he has in fact performed work for which he was improperly compensated and [ (2) ] if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable

inference." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011). "It is well settled . . . that it is possible for a plaintiff to meet this burden through estimates based on his own recollection." *Id.* The employer may then rebut with "evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.*

Here, throughout Plaintiff's employment, Defendants did not track the number of hours that any Yard worker, including Plaintiff, worked per workweek. Thus, the *Anderson* burden-shifting framework applies. First, Plaintiff has shown that he performed work for which he was improperly compensated. Although the parties dispute exactly when Plaintiff began work each day, Perez admitted that Plaintiff worked six days a week from at least 9 a.m. to 4:30 or 5 p.m. Based on Defendants' own admission regarding the number of hours Plaintiff worked, he did not receive the minimum wage and worked in excess of 40 hours per workweek without overtime pay.

Even if a portion of Plaintiff's work hours were spent in training, employers are required to pay employees for time spent attending on-the-job training unless all of the following factors are met: (1) attendance is outside of the employee's regular working hours; (2) attendance is voluntary; (3) the course, lecture, or meeting is not directly related to the employee's job; and (4) the employee does not perform any productive work during such attendance. 29 C.F.R. § 785.27. Plaintiff is entitled to compensation for training he received on testing compressors and bookkeeping because William and Perez conducted the training during work hours and the training was directly related to Plaintiff's job responsibilities of tracking inventory and helping with repairs. Plaintiff has shown that he has performed work for which he was improperly compensated.

Second, Plaintiff has produced "sufficient evidence to show the amount and extent of . . . [undercompensated] work as a matter of just and reasonable inference." *Kuebel*, 643 F.3d at 362. Plaintiff kept contemporaneous timesheets, which show the time Plaintiff started and ended work each day. As Plaintiff's estimates of time worked based on his own recollection suffice under *Anderson* and *Kuebel*, Plaintiff's daily timesheets establish the hours he worked as a matter of just and reasonable inference.

Defendants fail to rebut Plaintiff's evidence regarding the hours he worked. Perez admitted he did not know precisely how many hours Plaintiff worked per week. Also Defendants did not present any evidence showing that the hours recorded in Plaintiff's timesheets were unreasonable. Perez's testimony regarding the hours Plaintiff worked was contradictory and not credible. For example, Perez testified that "Waldi would come in late at 9 or 10 in the morning" to open the Yard, but during his deposition, he testified that the Yard "open[ed] at 8" and closed by "5 or before." As Defendants failed to rebut the inference that the hours recorded in Plaintiff's timesheets are an accurate reflection of the hours he worked, the Court adopts Plaintiff's timesheets to calculate the number of hours Plaintiff worked.

### 1. Minimum Wage

The parties agree that the applicable minimum wage throughout Plaintiff's employment was $13.00 per hour. *See* N.Y. Lab. L. § 652(1)(a)(i). Based on the hours Plaintiff worked, he is entitled to $8,294.07 in unpaid minimum wages. Although Defendants dispute the number of hours Plaintiff worked, they do not dispute Plaintiff's damages calculations given the appropriate findings of fact.

### 2. Overtime Pay

Under the FLSA, employees who work more than 40 hours per week must be compensated for each hour worked over 40 hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Employees are entitled to the same rate of overtime pay under NYLL. 12 N.Y. Comp. Codes R. & Regs. § 142-3.2 ("[A]n employer shall pay overtime at a wage rate of one and one-half times the basic minimum hourly rate . . . of the Fair Labor Standards Act."). Plaintiff is entitled to $6,242.40 in unpaid overtime wages.

### 3. Spread of Hours Pay

Under NYLL, Plaintiff is entitled to "'spread of hours pay' in addition to minimum and overtime wages." *Rana v. Islam*, 887 F.3d 118, 123 n.3 (2d Cir. 2018). An employee whose spread of hours over any day exceeds 10 hours is entitled an additional hour of pay at the state minimum wage amount. 12 N.Y. Comp. Code R. & Regs. § 142-2.4. Plaintiff is entitled to $910.00 in unpaid spread-of-hours pay.

### C.    Wage Notices and Statements

Under the Wage Theft Prevention Act (the "WTPA"), N.Y. Lab. Law § 195, at the time of hiring, an employer must provide a notice "in writing in English and in the language identified by each employee as the primary language of such employee," that informs the employee of, among other things, their pay rates, whether they are paid hourly, any allowances claimed, the employer's name, address, and telephone number, and the employee's regular pay date. N.Y. Lab. Law § 195(1)(a). The WTPA also requires that the employer "furnish each employee with a statement with every payment of wages" that includes, among other things, the dates of work

covered by that payment of wages, the rate or rates of pay and basis thereof, and net wages. N.Y. Lab. Law § 195(3).

Defendants violated the WTPA by not furnishing Plaintiff with a wage notice of the type described in NYLL § 195(1) when he was hired, and a wage statement of the type described under NYLL § 195(3) with each payment of wages.

The WTPA provides an affirmative defense to employers for failing to provide wage notices and statements when the employer (1) made a "complete and timely payment of all wages due" to the employee, or (2) it "reasonably believed in good faith that it was not required to provide the employee" the notices or statements. N.Y. Lab. Law § 198(1-b), (1-d).

The first defense is inapplicable because Defendants undercompensated Plaintiff. As for the second defense, Defendants failed to establish by a preponderance of the evidence that they "reasonably believed in good faith" that they were not required to furnish notices or statements to Plaintiff. Defendants have not put forward any evidence that they made any effort to learn and comply with their labor law obligations. To the contrary, Perez admitted that before this litigation, he never consulted with an attorney regarding labor law compliance. *See Jindan Wu v. Nat. Tofu Rest. Corp.*, No. 16 Civ. 3613, 2018 WL 1009274, at *7 (E.D.N.Y. Feb. 20, 2018) (holding that no reasonable juror could find that the defendants reasonably believed in good faith that they were not required to furnish wage notices when they "did not consult an attorney or other expert, or attend any trainings to learn about their labor law obligations"). The fact that Defendants may have been "simply unaware of this obscure law . . . is not sufficient" to establish the affirmative defense. *See id.* at *8.

Plaintiff is thus entitled to $10,000 in WTPA statutory damages for not furnishing Plaintiff with a wage notice and wage statements.

**D.      Liquidated Damages**

Under FLSA, an employer who underpays an employee is liable "in the amount" of those unpaid wages and "in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b). However, if the employer establishes that the violation "was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the original unpaid wage amount."  *Rana*, 887 F.3d at 122 (internal alterations and quotations omitted).  After certain amendments to the NYLL in 2010, there are "no meaningful differences" between the NYLL and FLSA's liquidated damages provisions.  *Id.* at 123.  Thus the standard for recovery under both statutes is the same, and recovery can be claimed under only one of the two statutes.  *Id.*

To establish that its violations were in "good faith," an employer "must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them."  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (internal quotations omitted). The Second Circuit has "characterized the employer's burden as a difficult one, emphasizing that double damages are the norm and single damages the exception."  *Id.* (internal alterations and quotations omitted).

Defendants have not established that their FLSA and NYLL violations were in good faith.  Perez did not take "active steps" to determine what these labor laws required.  *See Barfield*, 537 F.3d at 150.  Plaintiff is entitled to liquidated damages in the amount of $15, 446.47.

### E.    NYLL Prejudgment Interest

Under the NYLL, prejudgment interest may be awarded under the New York Civil Practice Law and Rules in addition to liquidated damages. *Reilly v. Natwest Mkts Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999); *accord Begum v. Ariba Disc., Inc.*, No. 12 Civ. 6620, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015). Interest is computed from "the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter . . . [is] computed from the date incurred." N.Y. C.P.L.R. 5001(b). When damages are incurred at various times, interest is computed upon "each item from the date it was incurred" or "all of the damages from a single reasonable intermediate date." *Id.* Adopting the latter approach, interest is calculated, and shall be paid, from the mid-point of Plaintiff's employment -- April 17, 2018 -- to the date of judgment at a rate of 9 percent. N.Y. C.P.L.R. 5004.

## III.    CONCLUSION

For the reasons stated above, it is hereby ORDERED that judgment is entered for Plaintiff against Defendants Abraham Perez and Abraham Refrigeration Corp. in the amount of $40,893.94 and prejudgment interest from April 17, 2018 to the date of judgment. Defendant Abraham Refrigeration A/C Corp. is dismissed.

Plaintiff is also entitled to costs and attorneys' fees. By July 10, 2019, the parties shall file a joint letter, not to exceed 3 pages (1) stating whether Plaintiff intends to file an application for costs and attorneys' fees, and (2) if so, proposing a joint briefing schedule.

Dated: July 1, 2019
      New York, New York

                                       **LORNA G. SCHOFIELD**
                           **UNITED STATES DISTRICT JUDGE**