UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
YSAEL ESPINOSA,

                      Plaintiff,

      -against-                               18 Civ. 8855 (LGS) (SN)

ABRAHAM REFRIGERATION CORP., d/b/a
ABRAHAM REFRIGERATION and ABRAHAM
PEREZ,

                      Defendants.
------------------------------------------------------------------------X

**DECLARATION OF LOUIS PECHMAN IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS**

Louis Pechman, under penalty of perjury, states as follows:

1.     I am the principal attorney at Pechman Law Group PLLC ("PLG"). I oversaw the prosecution of the claims in this matter and am personally familiar with the facts and circumstances discussed in this Declaration. Attached as Exhibit 1 to this Declaration is a true and correct copy of PLG's time entries in this matter.

**I.    Procedural and Factual History**

2.     Gianfranco J. Cuadra, the associate attorney primarily responsible for litigating this matter, conducted Plaintiff Ysael Espinosa's intake interview on August 8, 2018. I attended a portion of the intake interview.

3.     At the end of the intake interview, Espinosa reviewed and executed a retainer agreement with PLG written in Spanish, his primary language. In it, he agreed that PLG would represent him against his former employers to attempt to recover unpaid wages and related damages. As part of the retainer agreement, Espinosa was given the option of paying PLG's attorneys' fees on an hourly basis of $600.00 for my time, as well as other rates for associates at PLG. The retainer stated that if Espinosa chose not to pay

PLG's fees on an hourly rate basis, PLG's attorneys' fees would be the greater of (a) a contingency-fee basis of one-third of the amount recovered after reimbursement of costs incurred in litigation, such as in the case of settlement, or (b) PLG's fees and costs awarded by the Court, such as in the case of a favorable outcome at trial.

4.  PLG first attempted to negotiate an out-of-court resolution on behalf of Espinosa. To this end, PLG requested publicly-available information from the United States and New York State Departments of Labor concerning defendants Abraham Refrigeration Corp. ("Abraham Refrigeration") and Abraham Perez (collectively, "Defendants"), as well as Abraham Refrigeration A/C Corp.[1] PLG also mailed Defendants a demand letter by FedEx on August 24, 2018.

5.  When Defendants did not reply, Mr. Cuadra drafted, reviewed, and revised the Complaint in this action with Espinosa, which was filed on September 27, 2018. ECF No. 1. In it, Espinosa claims he worked as a mechanic/handyman at Abraham Refrigeration from approximately January through July 2018. *Id.* ¶¶ 1, 6. He regularly worked in excess of forty hours per workweek and was paid a weekly salary of $300.00. *Id.* ¶¶ 26, 28–29. Espinosa was paid in cash per workweek, without accompanying wage statements, and did not receive a wage notice upon hiring. *Id.* ¶¶ 44–45. Upon these facts, Espinosa sought to recover unpaid minimum and overtime wages, spread-of-hours pay, liquidated damages, statutory damages under the Wage Theft Prevention Act ("WTPA"), and attorneys' fees and costs pursuant to the New York Labor Law ("NYLL") and Fair Labor Standards Act ("FLSA").

---

[1] As is explained in further detail below, Abraham Refrigeration A/C Corp. was ultimately dismissed from this Action. *See* ECF Nos. 45–46. References to "ECF No. __" are to the Court's Case Management/Electronic Case Files system.

6. The Complaint was served on Defendant Perez's son, Rafael Batista, at the 480 East Tremont Avenue location of Abraham Refrigeration on October 15, 2018. *See* ECF Nos. 12–14 (reflecting service on the then three Defendants). Adam C. Weiss, Esq., appeared in this action on behalf of Defendants on October 26, 2018. ECF No. 15. Defendants filed their Answer on November 5, 2019. ECF No. 16.

7. Mr. Cuadra drafted all documents for the initial pretrial conference with District Judge Schofield and sent them to Mr. Weiss in November. *See* ECF Nos. 18–19. He also drafted and served Espinosa's Rule 26 initial disclosures, with an initial document production, on November 14, 2018.

8. To expedite a potential settlement, Mr. Cuadra drafted damages calculations based on Espinosa's personal records of his hours worked per workweek at Abraham Refrigeration. Mr. Cuadra sent Mr. Weiss the damages calculations, with an initial settlement demand and an explanatory cover email, on November 14, 2018. Defendants maintained that Espinosa was similar to an "unpaid intern" and therefore not entitled to recover any damages and, on that basis, refused to engage in settlement negotiations. Later, at Defendants' deposition on March 26, 2019, Mr. Perez stated he had neither seen Espinosa's settlement demand nor been made aware that this Court could hold a settlement conference with the parties.

9. With respect to Espinosa's damages, Mr. Perez testified as follows:

Q: Are you aware that we, the attorneys for Mr. Espinosa[,] have sent, have calculated damages for Mr. Espinosa and we have sent them to your attorney? Have you seen those calculations?
A: No.
Q: Okay. Are you aware that we sent this calculation to your attorney. We sent it with an entire email explaining all the calculations and setting forth what our settlement demand was?
Mr. Weiss: Objection to the form of the question to the extent that it requires for him to divulge attorney client communication.
Q: You can answer.

3

> A: That haven't [*sic*] been turned into me yet because we were waiting for this deposition.
> Q: Are you aware of that since before the filing of this lawsuit the plaintiff has been open to discussing potential settlement discussions?
> A: It hasn't reached my ears.
> Q: Are you aware that the court in this case -- are you aware that there are two judges in this case –
> A: No.
> Q: -- and that one of the judges is open to discussing settlement with the parties for free?
> A: I would have to talk to my attorney because he's my lawyer and he has to tell me what's to my advantage.

Ex. 2 at 95:24–96:22 (deposition excerpts enclosed).

10. In response to discovery requests (*i.e.*, interrogatories and document requests) Mr. Cuadra drafted and served upon Defendants on December 17, 2018, Defendants provided the same "lack of records" or "lack of responsive information" statement to each request and interrogatory and failed to produce a single document. The only document Defendants produced in the case was a two-page letter purportedly authored by Espinosa's mother. Defendants also served document requests on January 3, 2019, to which Espinosa, through counsel, responded on February 4, 2019.

11. On February 5, 2019, Mr. Cuadra and I had a call with Mr. Weiss to discuss both potential settlement and discovery deficiencies in Defendants' discovery responses. *See* ECF No. 25 § 1 ("Plaintiff will soon confer in good faith with Defendants regarding what Plaintiff believes are deficiencies in their responses and objections."). Mr. Cuadra then drafted a deficiency letter to Defendants, which was served on February 21, 2019. The letter stated, *inter alia*, that it could not be the case that Defendants' sole document produced was a two-page letter purportedly authored by Espinosa's mother. Mr. Weiss repeated that it was, and that Defendants lacked any other responsive records.

12. Throughout February 2019, Mr. Cuadra spoke with Espinosa about discovery, potential witnesses, and the letter Defendants had produced allegedly

authored by Dr. Espinosa, his mother. Mr. Cuadra communicated with Dr. Espinosa about the letter and signing an affidavit, which he drafted with Dr. Espinosa in English and Spanish. The affidavit was signed and served on Defendants late in March 2019.

13. Mr. Cuadra prepared for Espinosa's and Defendants' respective depositions and, due to a last-minute cancellation by Defendants, had to re-schedule Defendants' depositions.

14. The Court's Case Management Order required discovery to be completed by March 29, 2019. ECF No. 23 ¶ 8(a). The Court also required a joint status letter to be filed by April 12, 2019. *Id.* ¶ 13(b). Because neither party sought leave to file a dispositive motion, by order dated April 9, 2019, the Court scheduled a trial for June 10, 2019, and ordered the Parties to file motions in *limine* by April 26, 2019. ECF No. 27.

15. Throughout April 2019, the Parties discussed a potential settlement and engaged in several settlement discussions. Mr. Cuadra communicated with Espinosa and defense counsel throughout this period. When discussions were not fruitful, Mr. Cuadra drafted a motion *in limine* to preclude Defendants from calling witnesses other than Abraham Perez, the named Defendant, at trial. *See* ECF No. 29.

16. The Parties continued settlement discussions through April 2019. When they had not yet reached a settlement by May 2019, Mr. Cuadra worked with defense counsel to draft a joint stipulation of facts and conclusions of law, filed on May 6, 2019. ECF No. 30. On the same day, the Parties filed their respective proposed findings of fact and conclusions of law. ECF Nos. 32–33. Mr. Cuadra also worked with Espinosa on his deposition errata sheet.

17. By Order dated May 7, 2019, District Judge Schofield ordered the Parties to state by no later than May 8, 2019, whether they would attend a settlement conference before Magistrate Judge Netburn. ECF No. 34. As noted, Defendants chose not to do so.

ECF No. 35. Nevertheless, by Order dated May 13, 2019, District Judge Schofield directed the Parties to attend an in-person conference before her with their respective attorneys to discuss a potential settlement. ECF No. 36. The same day, the Parties submitted their proposed Joint Final Pre-Trial Order. ECF No. 37.

18. Later that day, on May 13, 2019, Espinosa finalized and filed his pre-trial memorandum of law, with exhibits. ECF Nos. 38–39.

19. Seeing the case would likely proceed to trial, I assigned Lillian M. Marquez, another associate attorney at PLG, to assist Mr. Cuadra in trial preparation and serve as second chair at the trial. Ms. Marquez filed a notice of appearance on May 16, 2019. ECF No. 40. She attended the settlement conference with Mr. Cuadra and Espinosa on May 16. The Parties did not settle their dispute, and the Court converted the conference into a final pre-trial conference. *See* ECF No. 41.

20. Between mid-May 2019 and June 10, 2019, Mr. Cuadra and Ms. Marquez talked and met with Espinosa on several instances to prepare for trial. They drafted direct and cross examination outlines, analyzed and prepared exhibits, and conducted mock trials with Espinosa on two occasions.

21. Mr. Cuadra and Ms. Marquez tried this case on June 10, 2019. They drafted and submitted a post-trial brief on June 14, 2019. ECF No. 43. Mr. Cuadra also revised Espinosa's damages calculations after trial, which were submitted to the Court via e-mail and on ECF. *Id.*

22. On July 1, 2019, the Court issued an opinion virtually 100% in favor of Espinosa on all claims. ECF No. 45.[2] The Court ruled, *inter alia*, that Espinosa was

---

[2] The Court dismissed Abraham Refrigeration A/C Corp. from the case because no evidence linked it to Espinosa. As noted, Espinosa was paid in cash. Defendants produced only two pages in discovery and claimed that Abraham Refrigeration A/C Corp. was a defunct corporation unrelated to Abraham

Defendants' employee, not an intern, was paid $300.00 per week, kept credible and contemporaneous records of his hours worked, and regularly worked in excess of forty hours per workweek. *Id.* It concluded that Espinosa was owed unpaid minimum and overtime wages, spread-of-hours pay, WTPA damages, liquidated damages, and attorneys' fees and costs as PLG had calculated. *See generally id.* On July 1, 2019, the Court issued a judgment in Espinosa's favor for the total sum of $45,329.71. ECF No. 46.

23. Thereafter, on July 9, 2019, the Court referred all applications for attorneys' fees and costs to Magistrate Judge Netburn. ECF No. 48. Pursuant to the Court's Order dated July 10, 2019 (ECF No. 49), we submit this application.

## II. Attorneys' Fees and Costs

24. PLG is a law firm that represents both employees and management in a wide variety of employment law issues, including wage-and-hour claims.

25. Prior to submitting this declaration, I reviewed PLG's contemporaneous billing records and removed any and all charges for time spent that could be considered duplicative of another billed task and reduced any time charged that could be considered excessive for the particular task.

### A. The Time Spent in the Prosecution of the Case Has Been Reasonable

26. As noted, Mr. Cuadra was the attorney primarily responsible for litigating this matter. He spent a significant amount of time on this case drafting and reviewing documents, conducting discovery, preparing for trial, and communicating with opposing counsel. I oversaw Mr. Cuadra's work. Ms. Marquez assisted Mr. Cuadra to prepare for and try this matter.

---

Refrigeration. Because nothing suggested otherwise, Espinosa did not challenge dismissal of Abraham Refrigeration A/C Corp. Aside from this, all other findings in the Court's opinion favored Espinosa.

27. Depending on the matter, PLG charges clients either by the hour or on a contingency basis. Regardless of the matter, it is PLG's practice in all cases to have attorneys keep contemporaneous records of their time. Records of expenses are also recorded as they are incurred and paid. Attorney time and expense records are entered into an electronic timekeeping program, RocketMatter, which tabulates the time spent by all of the attorneys as well as the expenses incurred on a given matter.

28. All travel time from our Midtown Manhattan office to the Courthouse has been billed at half-time (*e.g.,* only a trip to, but not from, the Courthouse is billed).

29. In anticipation of this Application, we deleted charges that we anticipated could be deemed redundant or excessive. For example, Mr. Cuadra and I did not bill some of our discussions concerning litigation strategies and the status of the case. Mr. Cuadra also did not bill all of his communications with Espinosa when they were of *de minimis* length or non-substantive in nature (*e.g.,* calls about deadlines or schedules).

30. The time spent by PLG in connection with this case, as reflected in the attached billing records, has been necessarily expended and reasonable and therefore may be used to calculate the lodestar.

**B.   The Hourly Rates Charged by PLG Are Reasonable**

31. Since graduating from Fordham Law School in 1983, I have specialized in labor and employment law. I was an attorney at Skadden, Arps, Slate, Meagher & Flom LLP; Vladeck, Waldman, Elias & Engelhard, P.C.; the *Daily News*; and Lambos & Giardino/ Lambos & Junge. From 1996 through 2014, I was a partner in the firm Berke-Weiss & Pechman LLP, and on January 1, 2015, I founded PLG.

32. PLG specializes in representing both workers and businesses in workplace disputes. We have advocated for busboys and construction workers as well as for

8

corporate executives and Fortune 500 companies.  Our experience with and ability to see all the angles of a dispute has earned us a reputation for resolving difficult cases.

33. I am licensed to practice law in the State of New York and am admitted in the Southern, Eastern, and Western Districts of New York, as well as the Second Circuit Court of Appeals.  I am also licensed to practice in the State of New Jersey and am admitted in the United States District Court for the District of New Jersey.

34. Over the past several years, I have handled over 300 FLSA and NYLL cases, representing both employees and employers, including Fortune 500 corporations. *See Sajvin v. Singh Farm*, No. 17-cv-4032 (RER), ECF No. 21 at 19 (E.D.N.Y. Aug. 13, 2018) (noting that Louis "Pechman's experience, expertise, and reputation in this District [warranted] an award slightly above the current stagnant hourly rate").  I have been appointed class counsel or counsel for FLSA Collectives in several FLSA cases. *See, e.g., Manley v. Midan Rest., Inc.*, No. 14 Civ. 1693, 2017 WL 1155916, at *9 (S.D.N.Y. Mar. 27, 2017) ("Louis Pechman and the Pechman Law Group have significant experience representing both employers and employees in wage and hour actions in this District …. Louis Pechman has an excellent reputation in this District in the field of employment law."); *Carino v. Broadway & 166, LLC*, No. 10 Civ. 8506, Docket No. 35 at *4 (S.D.NY. May 1, 2013) (recognizing that Louis Pechman "used his considerable expertise in this wage and hour case to achieve an excellent result for the Class in a highly efficient manner"); *In re Chickie's and Pete's Wage and Hour Litigation*, No. 12 Civ. 6820, Docket Entry No. 80 at *1 (consolidating cases and appointing Louis Pechman as lead counsel) (E.D. Pa. Mar. 28, 2013); *Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576, 2009 U.S. Dist. LEXIS 85955, at *7 (S.D.NY. Sept. 10, 2009) (recognizing Louis Pechman's "extensive experience in litigating wage and hour class actions").

35. I speak frequently on employment law issues, with a focus on wage-and-hour topics. Since 2010, I have moderated an annual program at the New York County Lawyers' Association on "How to Handle a Wage and Hour Case." I last moderated this program in November 2018 and will be moderating it again in December 2019. On October 6, 2015, I moderated a program at the City Bar on "Current Issues in Settlement of FLSA Cases," which included Judge Lewis A. Kaplan, Magistrate Judge Ronald L. Ellis, and Judge Brian M. Cogan. On September 30, 2015, I moderated a Bloomberg BNA webinar entitled "Top Ten FLSA Litigation Issues: 2015 Edition," which included Magistrate Judge Ramon E. Reyes. On March 2, 2016, I spoke at the New York Hospitality Restaurant Alliance on tipping policies at New York City restaurants. On March 11, 2016, I spoke at the New York City Employment Law Institute on a panel titled, "Prosecuting & Defending Wage and Hour Cases." On September 29, 2016, I spoke in a panel, which included Magistrate Judge Steven M. Gold, in a Bloomberg BNA webinar titled "Top Ten FLSA Litigation Issues: 2016 Edition." On October 24, 2016, I moderated a program at the New York City Bar titled "FLSA Settlement Issues One Year After *Cheeks*," presented by a panel including Chief Magistrate Judge Debra Freeman, District Judge Richard Sullivan, and Magistrate Judge Marilyn Go. On June 12, 2017, I served as a panelist in the American Conference Institute's 30th National Forum on Wage & Hour Claims and Class Actions as part of a presentation titled "Trends in Wage & Hour Class & Collective Actions." On October 24, 2017, I moderated a New York City Bar CLE-accredited program titled "FLSA Math: How to Calculate Wage-Related Damages." I moderated this program again on November 9, 2018, and I will be moderating it again on September 13, 2019. I was also Chair of the Restaurant and Hospitality Law Committee of the Association of the Bar of the City of New York from 2014 to 2017. I serve as an Adjunct

Professor at Fordham University School of Law teaching a course titled "Wage Theft: Employee Rights and Employer Responsibilities."

36. PLG is "A-V" rated by Martindale-Hubbell and my peers have selected me for inclusion in The Best Lawyers in America and in New York Super Lawyers since 2007. I have also been recognized by Super Lawyers as one of the "Top 100" lawyers in New York City. PLG has been selected by Best Lawyers as a 2017 "Tier 1" New York City law firm in the area of "Employment Law – Individuals" as well as "Labor Law – Management." I have also been selected as a Fellow of the American Bar Association, an honorary organization limited to 1% of attorneys who have demonstrated outstanding achievements and dedication to the highest principles of the legal profession.

37. Since 2013, my hourly rate has been $600.00. Over 300 of my clients have paid my fees at this rate throughout the last five years, including an advertising company, a shoe manufacturer, a money management firm, several restaurants, bakeries, a Broadway theater, a financial recruiting firm, a security guard company, a hedge fund, and a Fortune 100 transportation company. We also represent individuals, such as managing directors at Wall Street firms, executives, and other individuals, who retain my services at the $600.00 per hour rate.

38. Gianfranco J. Cuadra, the primary associate attorney at PLG who has worked on this matter, received his J.D. degree *magna cum laude* from Hofstra Law School in May 2009, where he was Research Editor of the Hofstra Law Review and an honorary member of the National Order of Scribes for outstanding legal writing. Mr. Cuadra is admitted to practice in the United States District Courts for the Eastern, Western, and Southern Districts of New York and is a member in good standing of the New York State Bar. He has worked at PLG as an associate attorney since March 2015 and has since been actively involved in the litigation of over sixty-five wage-and-hour cases ranging from

11

individual plaintiff to class and collective actions on behalf of both employees and management. He has independently conducted and defended depositions; attended court conferences; drafted, filed, and argued motions; counseled clients (both employees and management); conducted discovery; and settled single and multi-plaintiff wage-and-hour actions. Mr. Cuadra was one of the panelists who presented at the New York City Bar CLE-accredited program titled "FLSA Math: How to Calculate Wage-Related Damages" in October 2017. Mr. Cuadra again presented as a panelist in this program on November 9, 2018, and he will again present as a panelist in this program on September 13, 2019. On November 15, 2018, Mr. Cuadra presented as a panelist in a one-day mediator training program organized by the United States District Court, Southern District of New York on how to mediate wage-and-hour disputes under the FLSA and NYLL. Mr. Cuadra is a native Spanish speaker, Espinosa's native language. Prior to joining PLG in 2015, Mr. Cuadra worked as a litigation associate at Winston & Strawn LLP, where his hourly billable rate as a fourth-year associate was $475.00. Mr. Cuadra's hourly rate at PLG is $400.00 for all clients.

39. Lillian M. Marquez received her J.D. degree from The George Washington University Law School in May 2011. Ms. Marquez is admitted to practice in this Court and is a member in good standing of the New York State Bar. She is fluent in Spanish. Ms. Marquez has worked at PLG as an associate attorney since September 2016, representing clients in over 50 cases in federal court, including three wage-and-hour cases which went to trial. Ms. Marquez has spoken on panels regarding wage-and-hour litigation, including one titled "Hidden Gems of the New York Labor Law" at the Spring 2019 National Employment Lawyers Association Conference on Representing Employees and another titled "Developments in Wage & Hour Law" at the New York City Bar's 2018 Employment Law Institute. Prior to joining PLG, Ms. Marquez served as a staff attorney

for the U.S. Court of Appeals for the Second Circuit, for three years, and two years as a clerk for Magistrate Judge Lois Bloom of the Eastern District of New York. Ms. Marquez's regular hourly rate at PLG is $400.00 for all clients.

40. Maribel Lopez is an incoming third-year law student at Brooklyn Law School who works as a law clerk at PLG. She served as a student attorney in the school's Employment Law Clinic, where she was the recipient of the CLEA Award for excellence in clinic services. She is fluent in Spanish, Espinosa's native language. In this matter, Ms. Lopez provided paralegal support by helping compile trial binders and serving as a translator in Espinosa's mock trial preparation. *See* Ex. 1 at 11 (6/7/19 entry). Her hourly rate at PLG is $100.00 for all clients.

41. Below is a chart summarizing specific PLG professionals, their hourly rates, and their total time worked on this matter:

| Name | Position | Hours | Requested Rate Per Hour | Fees |
|---|---|---|---|---|
| Louis Pechman | Partner | 3.3 | $600.00 | $1,980.00 |
| Gianfranco J. Cuadra | Associate | 161.7 | $400.00 | $64,680.00 |
| Lillian M. Marquez | Associate | 24.7 | $400.00 | $9,880.00 |
| Maribel Lopez | Law Clerk | 3.8 | $100.00 | $380.00 |
| | | | **Total:** | **$76,920.00** |

42. My Firm's usual hourly billing rates, which are reflected in the chart above, are reasonable because these are the rates that PLG actually charges our clients and these are the rates that our clients pay.

43. According to the *2018 Real Rate Report thru September 2018* by Wolters Kluwer, the mean "Real Rate" for partners and associate in 2018 for attorneys working in labor and employment law in New York City was $682 and $473, respectively. Excerpts from the report are enclosed as Exhibit 3.

44. For these reasons, the hourly rates charged by PLG are reasonable.

13

### C. The Costs Incurred by Plaintiff's Counsel are Reasonable

45. PLG incurred $2,050.25 in litigation costs in this matter. Attached to this Declaration as Exhibit 4 are invoices and receipts for the costs PLG incurred in litigating this matter.

46. All costs were reasonably and necessarily incurred and are readily identifiable. The costs consist of:

| Date | Cost | Nature of Expense |
|---|---|---|
| 9/27/18 | $400.00 | Filing Fee for Complaint. ECF No. 1. |
| 10/16/18 | $165.00 | Service of process on Defendants. *See* ECF Nos. 12–14; Ex. 4 at 1. |
| 3/29/19 | $554.00 (not charged) | Videographer for Defendants' depositions. Ex. 4 at 2. |
| 4/8/19 | $545.25 | Fees/costs for deposition transcripts for Defendants' depositions. Ex. 4 at 3. |
| 4/26/19 | $540.00 | Translator for Defendants' depositions. Ex. 4 at 4. |
| 6/6/19 | $400.00 | Mercedes Avalos, half of translator fee for trial. Ex. 4 at 5. |
| **TOTAL CHARGED:** | **$2,050.25** | |

47. Notably, PLG deleted some costs and did not charge others. For example, PLG regularly charges $0.10 per page for photocopying expenses. We did not charge photocopying or printing expenses in this matter, even though PLG submitted courtesy copies of motion papers and exhibits to District Judge Schofield and printed 420 pages for service of process purposes. *See* Ex. 1 at 12 (10/10/18 entry). Furthermore, PLG did not charge postage for mailing the demand letter to Defendants via FedEx. *Id.* (8/24/18 entry). Last, PLG did not charge for the cost of the videographer for Defendants' depositions. *Id.* (3/29/19 entry); *see also* Ex. 4 at 2.

48. PLG paid the itemized costs on behalf of Espinosa pursuant to the terms of the retainer agreement and, as noted, discounted several expenses.

### III. The Fees and Costs Requested Are Reasonable

49. The current lodestar amount of $78,970.25 is reasonable for the reasons stated in the accompanying memorandum of law and those set forth above.

50. In this case, we achieved a 100% victory for Espinosa despite Defendants argument that they had a complete defense to liability. Accordingly, fees of $76,920.00 and costs of $2,050.25 should be awarded.

51. I declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

Dated: New York, New York
       July 26, 2019

_____
Louis Pechman